**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Pulte Homes, Inc., Pulte Home Corporation,<br>100 Bloomfield Hills Parkway, Suite 300<br>Bloomfield Hills, Michigan 48304,<br><br>and<br><br>Pulte Mortgage LLC,<br>7390 S. Iola Street,<br>Englewood, Colorado 80112,<br><br>    Plaintiffs,<br><br>  v.<br><br>Terry Goddard,<br>In his Official Capacity as Attorney<br>General for the State of Arizona<br>Office of the Attorney General<br>1275 West Washington Street<br>Phoenix, Arizona 85007,<br><br>and<br><br>Catherine Cortez Masto,<br>In her Official Capacity as Attorney<br>General for the State of Nevada<br>Office of the Attorney General<br>100 North Carson Street<br>Carson City, Nevada 89701,<br><br>    Defendants. | Civil Action No. 1:10-cv-00377<br>Judge Henry H. Kennedy |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

  1.  The Arizona Attorney General's Office and the Nevada Attorney General's Office have separately engaged a private plaintiffs firm, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), to conduct an investigation of Pulte Homes, Inc., Pulte Home Corporation, and Pulte

Mortgage LLC (collectively "Pulte" or the "Pulte Companies") in violation of Pulte's due process rights.

2.      At least until November 11, 2009—months after they had been retained by the Arizona Attorney General's Office and well after they had been retained by the Nevada Attorney General's Office to represent them in these investigations—the Cohen Milstein lawyers conducting these investigations represented a labor union, the Laborers' International Union of North America ("LIUNA"), that is waging an extensive campaign against Pulte consisting of activities, including potentially illegal activities, designed to damage Pulte's business and harm its shareholders.  The purpose of this campaign against Pulte and other homebuilders is to coerce Pulte and other homebuilders into forcing their subcontractors to sign union agreements.  The rules of professional conduct prohibit Cohen Milstein from representing Arizona and Nevada in this matter during a period of time when they also were representing LIUNA in matters adverse to Pulte.

3.      Additionally, the Arizona Attorney General's Office and the Nevada Attorney General's Office have each retained Cohen Milstein on an impermissible contingency fee basis, giving the Cohen Milstein lawyers an inappropriate pecuniary interest in the outcome of these investigations.

4.      Pulte has made extensive efforts to comply with the Arizona Attorney General's investigation.  To date, and before Pulte became aware of the violations to its constitutional rights, Pulte has produced over 70,000 pages of materials and extensive amounts of data requested by the Arizona Attorney General—information Pulte understands the Arizona Attorney General's Office has shared with the Nevada Attorney General's Office.  Pulte has repeatedly informed the Arizona and Nevada Attorneys General that Pulte will cooperate with

both investigations if conducted properly. While Pulte does not challenge the authority of either

state Attorney General to conduct these investigations through proper means, the means

currently utilized are improper and violate Pulte's due process rights.

5.    For the reasons identified above, the participation of the Cohen Milstein lawyers

in these investigations is fundamentally unfair to Pulte and violates Pulte's due process rights

under the United States Constitution and under Federal Law. The Pulte Companies bring this

action for declaratory and injunctive relief against defendants Terry Goddard, in his official

capacity as Attorney General for the State of Arizona, and Catherine Cortez Masto, in her

official capacity as Attorney General for the State of Nevada (collectively the "Attorneys

General"), to preserve the Pulte Companies' due process rights.

## PARTIES

6.    Pulte Homes, Inc. ("Pulte Homes") is a corporation incorporated and

headquartered in Michigan, with its principal place of business located at 100 Bloomfield Hills

Parkway, Suite 300, Bloomfield Hills, Michigan 48304. Pulte Homes, Inc. is the parent

company and ultimate owner of Pulte Home Corporation and Pulte Mortgage LLC. Currently,

subsidiaries of Pulte Homes build single-family homes in 69 markets in 29 states, including

Arizona and Nevada, and the District of Columbia. Pulte Homes was ranked as the nation's

largest homebuilder in 2009. Subsidiaries of Pulte Homes, including Pulte Home Corporation,

PN II, Inc., Del Webb Communities, Inc., and Centex Corporation operate homebuilding

businesses in the States of Arizona and Nevada. Pulte Homes' subsidiary, Del Webb

Corporation, has built homes in Arizona since 1960.

7.      Pulte Home Corporation is a corporation incorporated and headquartered in Michigan, with its principal place of business located at 100 Bloomfield Hills Parkway, Suite 300, Bloomfield Hills, Michigan 48304.

8.      Pulte Mortgage LLC ("Pulte Mortgage") is a limited liability company organized under the laws of Delaware, with its principal place of business at 7390 S. Iola Street, Englewood, Colorado 80112.  Pulte Mortgage is an independently licensed mortgage company and is regulated by the 28 states and the District of Columbia in which it is licensed.  In Arizona and Nevada, the Company enjoys a customer satisfaction rating approaching 90% among area homebuyers who obtained a mortgage from the Company.

9.      The Arizona Attorney General is an elected position in the State of Arizona, and is responsible for enforcement of the Arizona criminal code, as well as certain civil statutes.  The Attorney General maintains offices in Phoenix and Tucson.

10.     The Nevada Attorney General is an elected position in the State of Nevada, and is responsible for enforcement of the Nevada criminal code as well as certain civil statutes.  The Attorney General maintains offices in Carson City, Reno, and Las Vegas.

## JURISDICTION AND VENUE

11.     This action is brought pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983 to declare the rights and other legal relations of the parties.  Because Plaintiffs' claims raise a federal question, the jurisdiction of this Court is founded upon 28 U.S.C. § 1331.  Many of the events underlying this action occurred in the District of Columbia.  The private plaintiffs firm, Cohen Milstein, whose actions are at the core of this action, is located in the District of Columbia.  The contract between the Arizona Attorney General's Office and Cohen Milstein lawyers was executed by Cohen Milstein lawyers based in the District of Columbia.  The

contract between the Nevada Attorney General's Office and the Cohen Milstein lawyers was executed by Cohen Milstein lawyers based in the District of Columbia. The Arizona Attorney General's Office has required Pulte to produce all documents and information responsive to the Arizona Attorney General's Civil Investigative Demand ("CID") to Cohen Milstein lawyers in the District of Columbia. Upon information and belief, the Nevada Attorney General intends to require Pulte to produce all documents and information responsive to the Nevada Attorney General's subpoena to Cohen Milstein lawyers in the District of Columbia. The majority of activities conducted by Cohen Milstein lawyers on behalf of the Arizona Attorney General and the Nevada Attorney General have been conducted in the District of Columbia. Upon information and belief, the majority of activities conducted by Cohen Milstein lawyers on behalf of LIUNA have been conducted in the District of Columbia. Upon information and belief, if the Cohen Milstein lawyers are allowed to continue their participation in these investigations, the Cohen Milstein lawyers would continue to conduct the majority of its operations from their offices in the District of Columbia.

12.     Pulte's right to immediate judicial review in this Court with respect to the Arizona and Nevada Attorneys General's alleged conduct is based on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Fourteenth Amendment of the United States Constitution.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and because a substantial part of the events or omissions giving rise to the claims herein occurred in the District of Columbia.

## THE LIUNA CAMPAIGN AGAINST PULTE

14.     Cohen Milstein's involvement in this matter is particularly troubling given the Cohen Milstein lawyers' concurrent representation of LIUNA in matters adverse to Pulte.

LIUNA is a labor union headquartered in the District of Columbia with membership throughout the United States and Canada. LIUNA has engaged in a harassment campaign against Pulte and other homebuilders in an attempt to coerce the homebuilders into forcing their independent subcontractors to sign union agreements.

15.     As part of this harassment campaign, LIUNA has initiated false claims that Pulte and other residential homebuilders engaged in allegedly improper practices with respect to the sale and financing of homes. They have pressed these same false claims through official-looking, but misleading, reports, lawsuits, media articles, and testimony before various State and Federal regulatory and rulemaking proceedings. LIUNA engages in this campaign both under its own name and under the name of its project the "Alliance for Homebuyer Justice" ("Alliance").

16.     LIUNA's campaign against Pulte and other homebuilders employs a variety of tactics. One such tactic is the use of harassment, and in some cases actual violence, against Pulte employees and officers to increase the pressure on Pulte.[1]

17.     Additionally, LIUNA has engaged in an extensive campaign of misinformation. LIUNA has released numerous "reports" wrongly accusing Pulte and other homebuilders of abusive and fraudulent practices. LIUNA has repeated these false claims in comments in connection with federal rulemakings.

18.     LIUNA has also taken an active role in initiating litigation against Pulte and other homebuilders. This role is clearly illustrated in a report of a lawsuit filed by the plaintiffs firm Hagens Berman Sobol Shapiro LLP ("Hagens Berman") against KB Home. The report by the Phoenix New Times states that "[a]lthough local media coverage doesn't mention the union connection, Dawn Page of LIUNA confirmed that members of the union conducted all of the

---

[1]     *See, e.g., The Jones Company LLC v. LIUNA*, No. 4:09-cv-01965 (E.D. Mo. filed Dec. 1, 2009) (detailing attack by LIUNA supporters against the Jones Company, a Pulte subsidiary, and its employees).

preliminary research for the lawsuit and recruited homebuyer plaintiffs." The report continues: "LIUNA has been trying for years to get KB Homes [sic] to hire subcontractors who are members of the union. The latest lawsuit, despite being related to mortgage fraud, should help keep pressure on the homebuilder, Page says. 'It's all connected,' she says." Ms. Page, LIUNA's Organizing Communications Manager, further states that "*[t]he union plans similar actions against Lennar and Pulte Homes in the near future.*"[2]

19.     Indeed, a few months later in September 2009, the law firm McCuneWright, LLP issued a press release announcing that it had filed class action lawsuits against homebuilders, including Pulte's subsidiary Centex Corporation. In the press release issued in connection with these lawsuits, McCuneWright states that the allegations in these cases are "based on important research done by LIUNA." The connection to LIUNA is further underscored by the press release's quotation of LIUNA President Terry O'Sullivan regarding alleged homebuilder practices.[3]

20.     LIUNA has also sought to utilize state attorneys general in its campaign to pressure Pulte and other homebuilders into forcing their subcontractors to sign union agreements. In addition to providing the state attorneys general with misinformation, LIUNA has solicited complaints from individuals and organized the filing of these complaints with state attorneys general.

---

[2]     Ray Stern, *KB Homes and Countrywide Financial Sued by Group Affiliated with Construction Workers Union*, PHOENIX NEW TIMES, May 8, 2009, *available at* http://blogs.phoenixnewtimes.com/valleyfever/2009/05/kb_homes_sued_by_group_affilia.php (May 8, 2009) (emphasis added).

[3]     McCuneWright, LLP, *National Class Action Lawsuits Filed on Behalf of Homeowners Seeking Return of Their Investment* (Sept. 3, 2009), *available at* http://www.mwtriallawyers.com/assets/news/PR-Homebuilders-Class-Action_09-03-09.PDF.

21.    Upon information and belief, LIUNA has solicited complaints from homebuyers in a coordinated effort to persuade the Arizona Attorney General's Office and Nevada Attorney General's Office to investigate Pulte.

22.    One such homebuyer was Luz Ontiveros, a customer who originally signed a purchase agreement with Pulte in May 2005 and closed escrow in November of the same year. Ms. Ontiveros—who has contributed a statement to LIUNA's Alliance website—filed a complaint with the Arizona Attorney General's Office in August 2009, nearly four years after closing on her home and just days after the Arizona Attorney General served its CID on Pulte. Another complaint submitted to the Arizona Attorney General's Office was accompanied by a field notes sheet with "LIUNA" and "Alliance for Homebuyer Justice" printed at the top which rated the homeowner on a scale of 1-5.  (*See* Ex. 1.)

23.    LIUNA officials met with senior officials with the Arizona Attorney General's Office at least once, and at least as recently as April 2009—a mere four months before the Arizona Attorney General served its CID on Pulte.  In an e-mail dated April 7, 2009, from Jordan Ash of LIUNA to a high ranking attorney in the Public Advocacy Division of the Consumer Protection and Advocacy Section—the same division investigating Pulte—Mr. Ash thanks this attorney for the meeting and notes that LIUNA is working with Hagens Berman, a firm Mr. Ash states "I know you had said is the one private firm your office has worked with."[4]

24.    On September 24, 2009, LIUNA staged a press conference in Las Vegas, Nevada at which solicited homebuyers simultaneously submitted complaints to the Nevada Attorney General's Office.  These complaints repeated many of the same incorrect allegations that LIUNA

---

[4]    Hagens Berman filed a class action against Pulte in October 2009. *See Kaing v. Pulte Homes, Inc., Pulte Home Corporation, and Pulte Mortgage LLC*, No. C09-05057 (N.D. Cal. filed Oct. 23, 2009). Also, as noted above, Hagens Berman has served as counsel of record in at least one lawsuit initiated by LIUNA against another homebuilder. *See supra* ¶ 18.

has been making against Pulte in its "reports" and other campaign efforts. The press release clearly indicates that "[t]he homebuyers issued their call for action at a press conference organized by the Alliance for Homebuyer Justice, a project of LIUNA."[5] This press conference followed up on a letter from LIUNA's general counsel to the Nevada Attorney General on June 26, 2009, submitting solicited homebuyer complaints. (*See* Ex. 2.)

**THE ARIZONA ATTORNEY GENERAL'S OFFICE
RETAINS LAWYERS THAT HAVE REPRESENTED LIUNA IN DEVELOPING
MORTGAGE CASES ADVERSE TO PULTE TO HANDLE THE INVESTIGATION OF
PULTE ON A CONTINGENCY FEE BASIS**

25.     At least until November 11, 2009, after they had been retained by the Arizona and Nevada Attorneys General to represent them in these investigations, the attorneys at Cohen Milstein—the attorneys that are handling both the investigation by the Arizona Attorney General and the investigation by the Nevada Attorney General—represented LIUNA in matters relating to the development of mortgage cases against Pulte and other homebuilders.

26.     On July 2, 2009—no more than 3 months after meeting with LIUNA—the Arizona Attorney General's Office solicited proposals for outside counsel for evaluation, investigation, litigation, and adjudication services related to certain lending practices. (*See* Ex. 3.)

27.     The Arizona Attorney General's Office received only one response to the request for proposal. On July 15, 2009, the Cohen Milstein lawyers—then with Zuckerman Spaeder LLP—along with Berger & Montague, P.C. ("Berger"), submitted a joint response (the "Joint

---

[5]     LIUNA, *Homebuyers File Complaints Against Nation's Largest Corporate Homebuilder Alleging Deceptive Practices* (Sept. 24, 2009), *available at* http://www.liuna.org/Portals/0/docs/PressReleases/Press%20Release%20-%20Nevada%20AG%20Complaints%209%2024%2009.pdf.

Response") to the request for proposal for outside counsel. (*See* Ex. 4.) At the time, the Cohen Milstein lawyers represented LIUNA.

28.    The Joint Response states that the lawyers have been "retained by a labor union to develop mortgage cases on behalf of injured homeowners." *Id.*, Tab 7, at 10. The labor union referenced is LIUNA, and the mortgage cases that were developed were cases against Pulte and other homebuilders.

29.    The Joint Response also states that the lawyers have "been retained by one client to develop mortgage cases on behalf of injured homeowners under state and federal consumer fair lending laws." *Id.*

30.    While Arizona's request for proposal does not identify any particular entities as potential targets for investigation, the Joint Response singles out by name two homebuilders as potential targets for investigation: Lennar and Pulte. *Id.* ("Potential defendants include homebuilders such as Lennar and Pulte . . . ."). Thus, even before these lawyers had been retained by Arizona, they were singling out homebuilders, and Pulte and Lennar in particular, as potential targets for investigation.

31.    On August 6, 2009, the Arizona Attorney General's Office awarded the contract to the Cohen Milstein lawyers (while still at Zuckerman Spaeder) as the primary contractors, with Berger serving as the subcontractor. (*See* Ex. 5.)

32.    The agreement between the Arizona Attorney General's Office and the Cohen Milstein lawyers (while still at Zuckerman Spaeder) states that the lawyers' compensation is contingent on the recovery and collection of damages or monetary penalties. (*See* Ex. 3, § 1.1.2, at 7.)

33.     Furthermore, the contract states that if there is recovery and collection of damages or monetary penalties, the amount of compensation would be based upon 3 percent of any recovery within 2 months of the date of the contract; 5 percent of any recovery from 2 to 4 months of the date of the contract; 10 percent of any recovery received from 4 to 9 months of the dates of the contract; and 20 percent of the recovery after 9 months of the date of the contract. Counsel must distribute 20 percent of any monies received to the Office of the Arizona Attorney General for costs and expenses. *See id.*, § 1.1.3, at 7.

34.     On August 20, 2009—barely one month after the Cohen Milstein lawyers (while still at Zuckerman Spaeder) submitted their Joint Response and only two weeks after the team was retained by Arizona—the Arizona Attorney General's Office executed a CID to Pulte.

35.     On August 26, 2009—twenty days after the Cohen Milstein lawyers had been retained by the Arizona Attorney General's Office and six days after the Arizona Attorney General's Office executed the CID to Pulte—the Cohen Milstein lawyers claim that they issued written notification to LIUNA that they were withdrawing from continuing representation of LIUNA in Arizona-related matters. The Cohen Milstein lawyers have confirmed that they did not withdraw from representing LIUNA in matters outside Arizona until at least November 11, 2009—months after the CID was issued and after Pulte had produced nearly 42,000 pages of materials and extensive amounts of data in response to the CID. Much of the information Pulte produced was not confined to Pulte's Arizona operations but related to Pulte's nationwide operations.

36.     On September 15, 2009, the Arizona Attorney General's Office accepted the Center for Responsible Lending as a subcontractor to the Cohen Milstein lawyers.

37.     On September 29, 2009, the lawyers leading the investigation left Zuckerman Spaeder to join the Washington, DC office of Cohen Milstein.  Cohen Milstein announced that it had hired these lawyers "to lead its new public client practice group, which will help state attorneys general, nonprofits *and unions* in lawsuits . . . ."[6]  The firm bio for one of these lawyers suggests that the representation of LIUNA and other labor unions will continue, stating that the Cohen Milstein lawyers "represent[] other public-sector clients, including non-profit organizations *and labor unions* . . . ."[7]  The firm bio for another of these lawyers—one who had not joined Cohen Milstein until after the Arizona Attorney General had already retained the Cohen Milstein lawyers and commenced its investigation of Pulte—also suggests that the representation of LIUNA and other labor unions will continue, stating that the lawyer "represents other public-sector clients, including non-profit organizations *and labor unions* . . . ."[8]

38.     The Arizona representation followed these lawyers to Cohen Milstein.  On November 3, 2009, the Arizona Attorney General's Office formally accepted Cohen Milstein as a subcontractor to the Zuckerman Spaeder contract.  (*See* Ex. 6.)  Once these lawyers moved to Cohen Milstein, all of the work on the Arizona CID was transferred from Zuckerman Spaeder to Cohen Milstein.

39.     Upon information and belief, the lawyers at Cohen Milstein have been delegated substantial discretion in making decisions regarding the direction, scope, timing, and process of the Arizona Attorney General's Office's investigation of Pulte.

---

[6]     Brendan Pierson, *Cohen Milstein Launches Group to Help State AGs*, LAW360, Sept. 29, 2009, *available at* http://www.law360.com/articles/125226 (emphasis added).

[7]     *See* http://www.cmht.com/attorneys.php?PeopleID=59 (emphasis added) (last visited Mar. 5, 2010).

[8]     *See* http://www.cmht.com/attorneys.php?PeopleID=62 (emphasis added) (last visited Mar. 5, 2010).

40.     On February 25, 2010, counsel for Pulte sent a letter to the Arizona Attorney General's Office expressing concern over the use of confidential information provided by Pulte and over Cohen Milstein's conflicts of interest and requested that the Arizona Attorney General's Office remove Cohen Milstein from the investigation.

41.     On March 1, 2010, the Arizona Attorney General's Office indicated that it would not remove Cohen Milstein from the investigation.

## THE NEVADA ATTORNEY GENERAL'S OFFICE RETAINS THE SAME LAWYERS ON A CONTINGENCY FEE BASIS TO HANDLE THE INVESTIGATION OF PULTE

42.     Before October 15, 2009—and less than three weeks after LIUNA's September 24 staged press conference—the Nevada Attorney General's Office solicited proposals for outside counsel for evaluation, investigation, litigation, and adjudication services related to certain lending practices.  (*See* Ex. 7.)

43.     Upon information and belief, the lawyers from Cohen Milstein were the only lawyers that responded to the Nevada Attorney General's request for proposals.  At the time they responded to the Nevada Attorney General's request for proposals, the Cohen Milstein lawyers still represented LIUNA.

44.     Before the Nevada Attorney General's Office issued its request for proposal, and before Cohen Milstein submitted its response to that proposal, Pulte had produced nearly 42,000 pages of confidential information to the Arizona Attorney General's Office.  At the request of the Arizona Attorney General's Office, all of these materials were submitted to Cohen Milstein.

45.     On November 2, 2009—barely five weeks after LIUNA's staged press conference in Nevada—the Nevada Attorney General's Office finalized the bidding process and executed a contingency fee professional services agreement with Cohen Milstein.  (*See* Ex. 8.)  This

agreement provides that Cohen Milstein's compensation is contingent on the recovery and collection of damages or monetary penalties. *See id.* § 3.2, at 3.

46.     Furthermore, the contingency fee agreement states that if there is recovery and collection of damages or monetary penalties, the amount of Cohen Milstein's compensation would be based upon 10 percent of any recovery from 2 to 4 months of the date of the contract; and 15 percent of any recovery received after 4 months of the date of the contract. Cohen Milstein must distribute a percentage of any monies received to the Nevada Attorney General's Office for costs and expenses. *See id.* § 3.3, at 4.

47.     The request for proposals for outside counsel issued by the Nevada Attorney General's Office is very similar in material respects to the one issued by the Arizona Attorney General's Office. (*See* Ex. 9 (comparing the Nevada request for proposals to the Arizona request for proposals).) There are very few substantive variations in the purpose, background, goals, hierarchy, and scope of work sections of the requests for proposals. Based on the similarities between the requests, it appears the Nevada request was either patterned on the Arizona request, or both requests were drafted by the same author.

48.     The Cohen Milstein lawyers did not cease representing LIUNA in matters outside Arizona until at least November 11, 2009—well after they had been retained by the Nevada Attorney General's Office.

49.     The lawyers at Cohen Milstein shared confidential business information submitted by Pulte to the Arizona Attorney General's Office, and protected by the confidentiality agreement entered into by Pulte and the Arizona Attorney General's Office on November 19, 2009, with the Nevada Attorney General's Office.

50.     On February 3, 2010, the Nevada Attorney General's Office issued a subpoena to Pulte (the "Pulte subpoena").

51.     Lennar also received a subpoena from the Nevada Attorney General's Office on February 3, 2010 (the "Lennar subpoena"). Upon information and belief, even though the Lennar subpoena does not seek information from Lennar related to Pulte, the Lennar subpoena contains numerous references to Pulte, thereby improperly publicly disclosing the Nevada Attorney General's parallel investigation of Pulte.

52.     The Nevada subpoena contained confidential information from the Arizona Attorney General's Office investigation, including references to Pulte Mortgage's loan products by name and internal product code, references to clarifications that Pulte's outside counsel had made to Cohen Milstein's lawyers, and verbatim requests contained in the CID issued by the Arizona Attorney General's Office.

53.     Upon information and belief, the lawyers at Cohen Milstein have been delegated substantial discretion in making decisions regarding the direction, scope, timing, and process of the Nevada Attorney General's Office's investigation of Pulte.

54.     On February 26, 2010, counsel for Pulte sent a letter to the Nevada Attorney General's Office expressing concern over the use of confidential information provided by Pulte and over Cohen Milstein's conflicts of interest and requested that the Nevada Attorney General's Office remove Cohen Milstein from the investigation.

55.     On March 8, 2010, the Nevada Attorney General's Office indicated that it would not remove Cohen Milstein from the investigation.

## THE MISUSE OF CONFIDENTIAL INFORMATION OBTAINED THROUGH GOVERNMENT INVESTIGATION

56.     The rules of professional responsibility of Arizona, Nevada, and the District of Columbia prohibit Cohen Milstein from representing LIUNA in matters adverse to Pulte due to its representation of the Arizona and Nevada Attorneys General.

57.     The lawyers at Cohen Milstein handling the investigations at issue are members of the District of Columbia bar and are subject to the District of Columbia Rules of Professional Conduct.

58.     Upon information and belief, the lawyers at Cohen Milstein handling the investigations at issue were deputized as Special Attorneys General for Arizona and Nevada, and are subject to the Arizona and Nevada Rules of Professional Conduct.

59.     The Arizona, District of Columbia, and Nevada Rules of Professional Conduct prohibit a lawyer obtaining confidential information about a person through representing the government from representing a private plaintiff in a matter against that person.[9]   Because the Cohen Milstein lawyers have represented the Arizona Attorney General's Office in its investigation of Pulte, these rules prohibit the Cohen Milstein lawyers from representing LIUNA in matters adverse to Pulte.

60.     Because the Cohen Milstein lawyers have represented LIUNA in matters adverse to Pulte at the same time they represented the Arizona and Nevada Attorneys General, the risk that the Cohen Milstein lawyers have used or will use confidential information obtained in the Arizona or Nevada investigations is significant.  Even if the Cohen Milstein lawyers do not share actual documents, the Cohen Milstein lawyers cannot unlearn the confidential information they

---

[9]      Arizona Ethics Rule 1.11(b); DC Rule of Professional Conduct 1.11(a); Nevada Rule of Professional Conduct 1.11(a).

have already received and, without the Court's intercession, will continue to receive through the exercise of the Attorneys General's investigatory authority. (*See* Ex. 10.)

61.     Upon information and belief, the Cohen Milstein lawyers' representation of LIUNA has not involved litigation in court. Because their representation of LIUNA does not appear to have created a public record, any continued representation of LIUNA likely would not create a public record and would remain undetected and undetectable. If this Court does not enjoin the Attorneys General from allowing the Cohen Milstein lawyers from obtaining confidential information as part of these investigations, it will be impossible for Pulte to ensure that the knowledge gained in these investigations is not used impermissibly to benefit LIUNA.

## CONTINGENCY FEES

62.     The Arizona Attorney General's Office and Nevada Attorney General's Office each has retained Cohen Milstein on a contingency fee basis. Nevada law prohibits the Attorney General from retaining outside counsel in investigations, and both Arizona and Nevada law prohibit the Attorneys General from retaining outside counsel on a contingency fee basis. These impermissible contingency fee agreements give the Cohen Milstein lawyers a pecuniary interest in the outcome of the investigations, contrary to the will of the Arizona and Nevada legislatures.

63.     The Arizona Attorney General's Office has entered into an agreement with Cohen Milstein that makes Cohen Milstein's compensation contingent on recovering funds for the State. Specifically, the agreement provides that "[c]ompensation shall be contingent upon recovery and collection of damages or monetary penalties, except as provided in 1.1.3.5 below. The amount of compensation shall be based on the amount of damages or monetary penalties recovered to the extent that such funds are available after reimbursement for all disbursements as set forth in 1.1.4

below.  The reasonableness of the attorney's fees must be approved by the court.  It is understood that only one fee, calculated as provided in this section, will be paid."  (Ex. 3, at 7.)

64.      This compensation agreement is prohibited by Arizona law.  A.R.S. § 41-191(C) provides that the Attorney General may, "within the limits of appropriations made therefor, employ attorneys for particular cases *upon a fixed fee basis* . . . ."  (emphasis added).[10]  The Arizona Legislature has not authorized the Attorney General to retain outside counsel for investigations on any other basis.

65.      Similarly, the Nevada Attorney General's contingency fee agreement with Cohen Milstein is prohibited by Nevada law.  The contract requires Cohen Milstein to be paid on a contingent basis from fees and penalties obtained through the prosecution of alleged violations of the Nevada Deceptive Trade Practices Act ("NDTPA").  The contract provides that the "amount of compensation shall be based on the amount of damages or monetary penalties recovered . . . ."

66.      Nevada law does not permit the Attorney General to retain outside counsel to assist in investigations.  Nevada law provides that the Attorney General may retain outside counsel only as specifically authorized by the Nevada legislature.  *See* N.R.S. § 228.110(2).

67.      Nevada relies on N.R.S. § 41.03435 for its authority to enter into the contingency fee agreement with the Cohen Milstein lawyers.  N.R.S. § 41.03435 authorizes the retention of outside counsel only to defend in actions brought *against* the State or its agencies and subdivisions.  Section 41.03435 is contained in the part of Chapter 41 that addresses "LIABILITY OF AND ACTIONS AGAINST THIS STATE, ITS AGENCIES AND POLITICAL SUBDIVISIONS."  Other sections in this part make clear that Section 41.03435

---

[10]      Section 191(D) contains another provision that applies "in suits to enforce state or federal statutes pertaining to antitrust, restraint of trade, or price-fixing activities or conspiracies . . . ."  Because this provision only applies in such "suits," it is inapplicable here.  Even if it were applicable, the Arizona Attorney General's contingency fee agreement with Cohen Milstein is inconsistent with the statutory cap of $50/hour.

refers only to the retention of counsel to defend the State or its agencies and subdivisions. *See, e.g.*, N.R.S. §§ 41.0339 (circumstances under which official attorney to provide defense); 41.0341 (time for filing responsive pleading); 41.03415 (determination by official attorney whether or not to tender defense); 41.0347 (liability of State or political subdivision for failure to provide defense). Because the Nevada Attorney General's investigation of Pulte does not involve an action against the State or its agencies or subdivisions, the Nevada Attorney General is not authorized to engage outside counsel under Section 41.03435.

68.     Even if N.R.S. § 41.03435 authorized the Nevada Attorney General to engage outside counsel (and it does not), this section does not permit the Nevada Attorney General to retain counsel on a contingency fee basis. N.R.S. § 41.03435 provides that "[t]he Attorney General may employ special counsel whose compensation must be fixed by the Attorney General, subject to the approval of the State Board of Examiners, if the Attorney General determines at any time prior to trial that it is impracticable, uneconomical or could constitute a conflict of interest for the legal service to be rendered by the Attorney General or a deputy attorney general. ***Compensation for special counsel must be paid out of the reserve for statutory contingency account.***" (emphasis added).

69.     The contingency fee agreement wrongly assumes that the Nevada Attorney General's Office can pay a contingency fee out of any settlement or civil penalties. However, N.R.S. § 598.0975 provides that "all fees, civil penalties and any other money collected" under the NDTPA "must be deposited ***in the State General Fund*** and may only be used to offset the costs of administering and enforcing" the provisions of the NDTPA. (emphasis added). Because the Nevada Legislature has required that outside counsel be compensated out of the "reserve for statutory contingency account," outside counsel cannot be paid out of any recovery—which the

Legislature has required be deposited into the State General Fund.  Therefore, the Cohen

Milstein lawyers cannot be compensated on a contingency fee basis.

70.     These impermissible contingency fee agreements give Cohen Milstein a

pecuniary interest in the outcome of the Arizona and Nevada investigations.  This pecuniary

interest renders the investigations fundamentally unfair to Pulte.

## CAUSES OF ACTION

### COUNT I

**Due Process Violated by Misuse of Government Information**

71.     Pulte realleges and incorporates by reference the allegations in paragraphs 1

through 70 of this Complaint as if set forth fully herein.

72.     This claim is brought pursuant to and in accordance with 28 U.S.C. § 2201,

seeking a declaration of the rights and other legal relations of the parties.

73.     An actual controversy exists between Plaintiffs and Defendants concerning their

respective rights and duties pertaining to the investigations pending in Arizona and in Nevada.

74.     Defendants' conduct is a violation of Plaintiffs' rights under 42 U.S.C. § 1983 and

Due Process Clause of the Fourteenth Amendment of the United States Constitution.  The

Defendants' engagement of the outside law firm Cohen Milstein, which has represented the labor

union LIUNA in violation of the Arizona, District of Columbia, and Nevada rules of professional

conduct, will result in a deprivation of Plaintiffs' property, in the form of monetary penalties,

without due process of law, namely a fair and ethical investigation.

75.     Specifically, Plaintiffs contends the following:

- Defendants are subjecting and will continue to subject Plaintiffs to conduct
  that occurred under color of state law, including pursuing a state investigation
  with outside counsel;

- This conduct has deprived and will continue to deprive Plaintiffs of rights guaranteed under the United States Constitution, specifically, the right to procedural due process under the Fourteenth Amendment;

- Plaintiffs have been and will be deprived of its property rights, including through the imposition of monetary penalties in connection with the investigation;

- Plaintiffs have been and will be denied due process of law because of the lack of a fair and ethical investigation; and

- Defendants are allowing a private law firm to use the States' investigative powers to advance the interest of private clients adverse to Plaintiffs.

76.     Plaintiffs have no adequate remedy under state law.  Plaintiffs have unsuccessfully attempted to resolve these issues in a non-litigation context with the Arizona and Nevada Attorneys General.  There is no mechanism for Plaintiffs to object to the Attorneys General's unlawful actions without waiting for the Attorneys General to file an action against Plaintiffs.  Plaintiffs' only option, besides the instant action, is to refuse to comply with the investigation, which would subject Plaintiffs to monetary and other penalties.

77.     Plaintiffs desire a judicial determination and declaration of Plaintiffs' and Defendants' respective rights and duties, specifically, that Defendants' engagement of the law firm Cohen Milstein, under the circumstances discussed herein, is a violation of Plaintiffs' rights under 42 U.S.C. § 1983 and Due Process Clause of the Fourteenth Amendment of the United States Constitution.

COUNT II

**Due Process Violated by the Retention of Counsel Under Contingency Fee Agreements Contrary to Statutory Requirements**

78.     Pulte realleges and incorporates by reference the allegations in paragraphs 1 through 77 of this Complaint as if set forth fully herein.

79.     This claim is brought pursuant to and in accordance with 28 U.S.C. § 2201,

seeking a declaration of the rights and other legal relations of the parties.

80.     An actual controversy exists between Plaintiffs and Defendants concerning their

respective rights and duties pertaining to the investigations pending in Arizona and in Nevada.

81.     Defendants' conduct is a violation of Plaintiffs' rights under 42 U.S.C. § 1983 and

Due Process Clause of the Fourteenth Amendment of the United States Constitution.

Defendants' engagement of the outside law firm Cohen Milstein, which has a pecuniary interest

in the outcome of the investigations due to being retained on a contingency fee basis prohibited

by State law, will result in a deprivation of Plaintiffs' property, in the form of monetary

penalties, without due process of law, namely a fair and ethical investigation.

82.     Specifically, Plaintiffs contends the following:

- Defendants have subjected and will continue to subject Plaintiffs to conduct that occurred under color of state law, including pursuing a state investigation with outside counsel;

- This conduct has deprived and will continue to deprive Plaintiffs of rights guaranteed under the United States Constitution, specifically, the right to procedural due process under the Fourteenth Amendment;

- Plaintiffs have been and will be deprived of their property rights, including through the imposition of monetary penalties in connection with the investigation;

- Plaintiffs have been and will be denied due process of law because of the lack of a fair and ethical investigation; and

- Defendants are allowing a private law firm to use the States' investigative powers to advance the interest of private clients adverse to Plaintiffs.

83.     Plaintiffs have no adequate remedy under state law.  There is no mechanism for

Plaintiffs to object to the Attorneys General's unlawful actions without waiting for the Attorneys

General to file an action against Plaintiffs.  Plaintiffs' only option, besides the instant action, is to

refuse to comply with the investigation, which would subject Plaintiffs to monetary and other penalties.

84.    Plaintiffs desire a judicial determination and declaration of Plaintiffs' and Defendants' respective rights and duties, specifically, that Defendants' engagement of the law firm Cohen Milstein, under the circumstances discussed herein, is a violation of Plaintiffs' rights under 42 U.S.C. § 1983 and the Due Process Clause of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Pulte respectfully requests that the Court enter judgment in its favor and against the Arizona and Nevada Attorneys General granting the following relief:

1.    Declaring that the Arizona and Nevada Attorneys General have violated Pulte's constitutional rights to due process by employing Cohen Milstein to conduct state investigations on a contingency fee basis;

2.    Declaring that the Arizona and Nevada Attorneys General have exceeded their statutory authority in contracting for Cohen Milstein to conduct an investigation;

3.    Issuing an order enjoining the Arizona and Nevada Attorneys General from employing Cohen Milstein in violation of Pulte's constitutional due process rights;

4.    Issuing an order enjoining Cohen Milstein from sharing confidential information or using it in any way, directly or indirectly, to advance the interests of LIUNA or any other private party;

5.    Awarding Pulte its reasonable costs incurred in bringing this action, including attorneys fees; and

6.    Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

Andrew L. Sandler (DC Bar No. 387825)
Kirk D. Jensen (DC Bar No. 477629)
BUCKLEYSANDLER LLP
1250 24th St., NW, Suite 700
Washington, DC 20037
(202) 349-8000 (Telephone)
(202) 349-8080 (Facsimile)

*Counsel for Plaintiffs Pulte Homes, Inc., Pulte Home
Corporation, and Pulte Mortgage LLC*

Dated:  March 16, 2010